IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|   |   |
|---|---|
| JEROME WANT, | * |
| PLAINTIFF, | * |
| v. | * Case No.: PWG-18-2833 |
| SHINDLE PROPERTIES, LLC, *et al.*, | * |
| DEFENDANTS. | * |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerome Want has spent the last year residing at the Meadows Apartments, owned by Defendant Shindle Properties, LLC and managed by Defendant Michelle Miller-Thorpe (together, "Shindle"). During the time that he has lived there, he has been bothered by noise coming from the apartment of another tenant, Lisa Canady.[1] Am. Compl., ECF No. 13. After Shindle failed to remedy the situation to his satisfaction and, ultimately, notified Mr. Want that it would not be renewing his lease and that he had to move out by October 31, 2018, Mr. Want filed suit, alleging, *inter alia*, breach of contract and various forms of discrimination. Compl., ECF No. 1. Pending is his Motion for Injunctive Relief, in which he seeks the Court's assistance to prevent his eviction. ECF No. 7. The parties have fully briefed the Motion, including through Plaintiff's Supplement to his Reply. ECF Nos. 18, 22, 23. A hearing is not necessary. *See* Loc. R. 105.6. It appears that having to move from his apartment will be difficult for Mr. Want, who alleges that he is elderly, has disabilities, and recently had surgery. Nonetheless, because he has

---

[1] Mr. Want's claims against Ms. Canady have been dismissed. ECF No. 4. His motion to reconsider this dismissal, ECF No.6, is pending.

not shown a likelihood of success on the merits and, in part, seeks relief that the Court cannot grant, his Motion must be denied.

**Background**

Mr. Want moved into Meadow Apartments on November 1, 2017. Am. Compl. 1. He claims that he carefully selected the apartment complex as one that met his needs as a person with "physical limitations" and one where the other tenants would be quiet. *Id.* at 2, 7–8. According to Mr. Want, his neighbor Ms. Canady made excessive noise, which Shindle did not remedy. *Id.* at 2–4. Shindle notified him that it would not be renewing his one-year lease, which would end October 31, 2018. *Id.* at 2–4. Mr. Want filed suit against Defendants on September 12, 2018, and filed an Amended Complaint on October 11, 2018. He alleges breach of contract; misrepresentation and fraud; "Lack of Good Faith"; gender, race, disability, and age discrimination; violation of state and federal laws prohibiting discrimination in housing; and retaliation. *Id.* at 4–10. He seeks "$803,745 plus double damages as punitive damages." *Id.* at 11. And, given that Plaintiff is proceeding without counsel[2] and in his Complaint, Plaintiff sought an injunction to "allow plaintiff to maintain his present residency," Compl. 7, I construe his Amended Complaint to include this requested relief. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976).

In his Motion for Injunctive Relief, Mr. Want asks the Court to enjoin Defendants from evicting him on October 31, 2018 because he "is not physically fit to undertake the rigors of a move" and "there is no suitable housing anywhere in the area." Pl.'s Mot. 1. Specifically, he

---

[2] Although Plaintiff is representing himself, his correspondence states that he is a "PhD" and that he attended law school, but never took the bar exam. Sept. 11, 2018 Ltr., ECF No. 1-1.

asks the Court to enjoin Defendants from evicting him for at least eight months and to "prevent any lower court (state or district) from approving any eviction action." *Id.*

## Discussion

The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds as recognized by Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 354 (4th Cir. 2011). To obtain a preliminary injunction, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). As a preliminary injunction is "an extraordinary remedy, it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Insofar as Mr. Want asks the Court to enjoin the state courts from issuing any orders regarding his eviction, the Anti-Injunction Act, 28 U.S.C. § 2283, "bars a federal court from granting 'an injunction to stay proceedings in a State court.'" *Kallon v. M&T Bank*, No. TDC-17-2752, 2018 WL 1997252, at *3 (D. Md. Apr. 27, 2018) (quoting 28 U.S.C. § 2283). Indeed, it "is an 'absolute prohibition' against interference in [state court] proceedings except under specific circumstances not at issue in this case." *Id.* (quoting *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 (4th Cir. 2004)). Accordingly, this request is denied. *See id.*

To the extent that Mr. Want asks the Court to enjoin the Defendants from evicting him, he fails to show that he is likely to succeed on the merits of any of his claims. To meet this requirement, the plaintiff must "clearly demonstrate that he will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Real Truth,* 575 F.3d at 346–47 (emphasis from the original). Merely "providing sufficient factual allegations to meet the [Fed. R. Civ. P.] 12(b)(6) standard of *Twombly* and *Iqbal*" does not meet the rigorous standard required under the *Winter* and *Real Truth* decisions. *Allstate Ins. Co. v. Warns,* No. CCB-11-1846, 2012 WL 681792, at \*14 (D. Md. 2012). I will consider the likelihood of Mr. Want's success on the merits of each of his claims in turn.

*Count I – Breach of Contract*

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 206 Md. 195, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). To prevail on his breach of contract claim, Mr. Want must show "contractual obligation, breach, and damages." *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). Plaintiff claims that Defendants breached the lease because another tenant was making noise between midnight and 6 a.m. and "creating a constant nuisance and disturbance" with her noise. Am. Compl. 4–5. But, the lease provided that "Landlord . . . shall not be responsible to Tenant for the non-observance or violation of the . . . covenants" of quiet enjoyment. Lease ¶ 9, ECF No. 13-2. Accordingly, he has not shown that he is likely to prove breach so as prevail on this claim. *See Tucker*, 83 F. Supp. 3d at 655; *Kumar*, 17 A.3d at 749.

4

*Count II – Misrepresentation and Fraud*

To state a claim for misrepresentation and fraud, Mr. Want must allege five elements with particularity: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result.

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (quoting *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L–09–2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) (citing *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534 (Md. 1982))). Additionally, Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.' " *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)).

Plaintiff claims that Ms. Miller-Thorpe "proclaimed to the plaintiff that the building, and in particular, neighbors to 105, were quiet." Am. Compl. 5. And he alleges that "she also made other representations that turned out to be false, clearly to just fill the apartment." *Id.* Notably, he does not claim that Thorpe knew that the building residents, or specifically the residents in apartments adjoining 105, were not quiet, or that she acted with reckless disregard for the truth of this assertion. Nor does he identify what other false statements Ms. Miller-Thorpe made or when she made them. Given that he has not pleaded his claim for misrepresentation and fraud sufficiently, he cannot establish that he is likely to succeed on the merits of this claim. *See*

5

*Allstate Ins. Co.*, 2012 WL 681792, at *14.

*Count III – Lack of Good Faith*

Mr. Want claims that Defendants "have failed to deal in a good faith manner with the tenant." Am. Compl. 5. As an example, he alleges that Ms. Miller-Thorpe "misrepresented certain aspects of the housing such as 'the building is close to Dual Hwy and shopping for walking. I can see it from my office,'" when, according to Plaintiff, "[t]hree buildings block Thorpe's view of Dual Hwy and it is 8/10 of a mile to the grocery store which is difficult for an elderly handicapped person." *Id.* There is no independent cause of action in Maryland for "lack of good faith." And, while breach of the implied duty of good faith and fair dealing can be alleged as "part of a breach of contract claim," it is not a stand-alone cause of action. *See Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. WDQ-13-40, 2015 WL 164718, at *5 (D. Md. Jan. 12, 2015); *Mt. Vernon Props., LLC v. Branch Banking & Trust Co.,* 907 A.2d 373, 381-82 (Md. Ct. Spec. App. 2006) ("A breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, *e.g.,* breach of contract, than as a stand-alone cause of action for money damages, and we conclude that no independent cause of action at law exists in Maryland for breach of the implied duty of good faith and fair dealing."). Because Plaintiff has neither alleged nor shown that his apartment's location in relation to shopping or a grocery store was a contractual obligation of his lease, he is not likely to prevail on a claim for breach of the implied duty of good faith and fair dealing as part of a breach of contract claim. *See Tucker*, 83 F. Supp. 3d at 655; *Kumar*, 17 A.3d at 749.

*Counts IV, V, VI, VII – Discrimination and Retaliation Claims under FHA*

Persons "engaging in residential real estate-related transactions [may not] discriminate against any person . . . because of race, color, [or] sex." *Johnson v. Bank of Am., N.A.*, No. PX-

17-3007, 2018 WL 3036470, at *3 (D. Md. June 15, 2018) (quoting 42 U.S.C. § 3605(a) (Fair Housing Act ("FHA"))). To establish a prima facie case for discrimination claim under the FHA, "a plaintiff must show that 'he is a member of a protected class and that he was treated differently than other tenants because of his membership in that class.'" *Morris v. Leon N. Weiner & Assocs., Inc.*, No. TDC-16-2860, 2017 WL 1169522, at *4 (D. Md. Mar. 28, 2017) (quoting *Roberson v. Graziano,* No. WDQ-09-3038, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), *aff'd*, 411 Fed. App'x 583 (4th Cir. 2011)).

> [T]o prove a claim of retaliation under the FHA, a plaintiff must establish that: (1) the plaintiff was engaged in protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.

*Oxford House, Inc. v. City of Salisbury, Md.*, No. RDB-17-1978, 2018 WL 3127158, at *11 (D. Md. June 26, 2018) (noting that FHA retaliation claims "are analyzed under the same standards that are applied to retaliation claims brought under Title VII and other employment discrimination statutes" (quoting *Hall v. Greystar Mgmt. Servs., LP.*, 28 F. Supp. 3d 490, 495 (D. Md. 2014))).

The *McDonnell-Douglas* burden-shifting framework applies to FHA claims. *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990). Under that test, after a plaintiff establishes a prima facie case,

> the burden of production then shifts to the [defendant] to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse . . . action is a pretext and that the true reason is discriminatory or retaliatory.

*Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016); *see also McDonnell Douglas Corp.*, 411 U.S. 792, 802, 804 (1973).

7

Mr. Want claims gender-based discrimination in Count IV; race-based discrimination in Count V; and discrimination in violation of the FHA and Maryland law in Count VI. He claims gender discrimination based on the termination of his lease while the lease of another tenant, who is female, was not terminated, despite her "repeated disturbances of the peace and blatant outright violation of the lease." Am. Compl. 6. As best I can discern, this is the basis for his race discrimination claim as well. His race-based claim refers vaguely to "Thorpe's conduct, and in particular, Canady's conduct reflect[ing] [an] attitude" and asserts that "in the work world white men are being subjected to race and gender discrimination by females." *Id.* He claims that "[f]emale property managers have been extremely retaliatory against the plaintiff and other white males in the area with whom the plaintiff has been acquainted (not making repairs and threatening eviction while the plaintiff has paid his rent)." *Id.* at 7. In Count VI, he claims that Defendants know "that he had physical limitations," and he claims that "[h]e is not at all able to undertake the strenuous activity of looking for a new residence, much less undertaking the move itself." *Id.* Mr. Want claims in Count VII that he "lodged a complaint with the Maryland Office of the Attorney General Consumer division in January, 2018" and "Thorpe threatened Plaintiff with eviction if he took any legal action against Canady," which he views as retaliation. *Id.* at 9.

While his comparison of the treatment he received as an elderly, white male, to the treatment Ms. Canady received as a younger, Black female, may state a claim for discrimination in housing, *see Morris*, 2017 WL 1169522, at *4, it is not enough to show that he is *likely* to prevail on the merits of any of these claims, in light of Defendants' identification of a non-discriminatory and non-retaliatory reason for terminating his lease—it had ended. *See Real Truth,* 575 F.3d at 346–47; *Allstate Ins. Co.*, 2012 WL 681792, at *14. A review of the filings to date suggests that Mr. Want's lease expires on November 1, 2018; Defendants had the right to

terminate it on 60 days' notice; and they exercised that right. And, Defendants assert that Mr. Want has not paid his October rent, which would be a breach of the lease, Defs.' Opp'n 1, and Mr. Want does not dispute this assertion, *see* Pl.'s Reply. "Courts have declined to issue a preliminary injunction when there are significant factual disputes." *Chattery Int'l, Inc. v. JoLida, Inc.,* No. WDQ-10-2236, 2011 WL 1230822, at *9 (D. Md. 2011) (citing *Allegro Network LLC v. Reeder,* No. 09-912, 2009 WL 3734288, at *3 (E.D. Va. Nov. 4, 2009)); *see Torres Advanced Enter. Sols. LLC v. Mid-Atl. Professionals Inc.*, No. PWG-12-3679, 2013 WL 531215, at *3 (D. Md. Feb. 8, 2013) ("In the present case, the record highlights multiple unresolved factual disputes. As the resolution of these disputes is central to the determination of a breach of contract claim, Plaintiff is prevented from making a clear showing of a likelihood of success on the merits."). Consequently, Mr. Want has not demonstrated that he is likely to prevail on his FHA discrimination and retaliation claims. *See Chattery*, 2011 WL 1230822, at *9.

*Count VIII – Age Discrimination*

In his age discrimination claim, he alleges that Defendants' "conduct . . . clearly constitutes abuse and discrimination for age, gender and race." Am. Compl. 10. He claims a "[v]iolation of the Older Americans Act of 1965," *id.*, but the Older Americans Act, 42 U.S.C. § 3001 *et seq.*, does not provide for a cause of action for discrimination. Therefore, Mr. Want cannot show that he is likely to prevail on his age discrimination claim.

*Count IX – Violation of the Americans with Disability Act*

Mr. Want states that the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, "prohibit[s] retaliatory conduct of any form or discrimination against . . . those with disabilities." Am. Compl. 10. He does not allege which ADA provision Defendants violated, *see id.*, perhaps because none apply to Defendants, which own and manage a private apartment complex. *See*

*Hardaway v. Equity Residential Servs., LLC*, No. DKC-13-0149, 2015 WL 858086, at *5 (D. Md. Feb. 26, 2015), *aff'd sub nom. Hardaway v. Equity Residential Mgmt. LLC*, 675 Fed. App'x 381 (4th Cir. 2017). In *Hardaway*, this Court observed, *id.*:

> Title III, addressing public accommodations, is the only area potentially implicated [in a suit against a private apartment complex]. Title III prohibits discrimination by "any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182. The statute enumerates twelve categories of establishments which are considered places of public accommodation, including: "an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor." 42 U.S.C. § 12181(7).

This Court concluded that the defendant's apartment complex in that case did "not fall under any of those groups." *Id.* It reasoned:

> The rationale in *Mitchell v. Walters,* Civ. Action No. 10–1061(SRC), 2010 WL 3614210, at *4 (D.N.J. Sept.8, 2010), applies here:
>
>> A residential apartment complex, such as the Wyndhurst where Plaintiff claims Defendants failed to accommodate her disabilities, does not fall into any of those groups. The category which most resembles the Wyndhurst is the "inn, hotel, motel, or other place of lodging" group. Even construing this category liberally, the Court discerns no facts in the Amended Complaint which would ever remotely support the characterization of Plaintiff's apartment complex as a place of lodging or other transient housing falling with the purview of the ADA.
>
> *See also Indep. Housing Svcs. of San Francisco v. Fillmore Ctr. Assocs.,* 840 F.Supp. 1328, 1344 (N.D.Cal.1993) ("[A]partments and condominiums do not constitute public accommodations within the meaning of the [ADA]."). The court in *Mitchell,* 2010 WL 3614210, at *4, further noted that "[t]he Wyndhurst's receipt of federal funds in partial payment of Plaintiff's rent through vouchers issued by HUD does not transform the apartment complex into a place of public accommodation." *See also Reyes v. Fairfield Props.,* 661 F.Supp.2d 249, 264 n. 5 (E.D.N.Y.2009) (concluding that any ADA claim plaintiff might have pled would be insufficient as a matter of law, noting that property management defendants did not own or operate a place of public accommodation simply because property accepted tenants receiving federal housing subsidies). Accordingly, any ADA claim in this context is subject to dismissal.

*Id*. Thus, Mr. Want cannot show that he is likely to prevail on the merits of an ADA claim against Defendants. *See id.*

## Conclusion

In sum, Mr. Want has not demonstrated that he is likely to prevail on the merits of any of his claims. Because he has not established this necessary element for a preliminary injunction, his Motion for Injunctive Relief must be denied, despite the hardship the move may impose. *See Real Truth*, 575 F.3d at 347. Additionally, the Anti-Injunction Act prohibits this Court from granting his request for the Court to enjoin the state courts from issuing any orders regarding his eviction. 28 U.S.C. § 2283. Accordingly, Plaintiff's Motion, ECF No. 7, is denied.

## ORDER

For the reasons stated in this Memorandum Opinion, it is, this 29th day of October, 2018, hereby ORDERED that Plaintiff's Motion, ECF No. 7, IS DENIED.

/S/
Paul W. Grimm
United States District Judge